# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PROTECT DEMOCRACY PROJECT, INC.,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HEALTH &
HUMAN SERVICES,

*Defendant.*

Civil Action No. 17-792 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Protect Democracy Project, Inc. ("Protect Democracy") brings this Freedom of Information Act, 5 U.S.C. §552 ("FOIA") action, seeking to compel the Department of Health and Human Services to release records related to the discontinuation of advertising for healthcare.gov, the federal health insurance marketplace, during the final weeks of the 2016-17 open enrollment period. The case is currently before the Court on the parties' cross-motions for summary judgment. *See* Dkt. 18; Dkt. 20. The issues raised by those motions have been narrowed over the course of briefing, and the only remaining question before the Court is whether the Department lawfully invoked FOIA Exemption 5—in particular, the deliberative process and attorney-client privileges—to withhold the disputed records or portions of records. For the reasons explained below, the Court concludes that it currently lacks sufficient information to decide this question with respect to the deliberative process privilege, and that, with one exception, *in camera* review of the disputed material is premature. With respect to the Department's assertion of attorney-client privilege, however, the Court concludes that the

Department has met its burden. The Court will, accordingly, **GRANT** in part and **DENY** in part both the Department's motion for summary judgment and Protect Democracy's cross-motion.

## I. BACKGROUND

On February 15, 2017, Protect Democracy submitted a FOIA request to the Department seeking the following records:

(1) Documents between and among employees of the Department of Health and Human Services ("HHS") and/or the Centers for Medicare and Medicaid Services ("CMS") "concerning the decision to discontinue advertising for healthcare.gov and/or enrollment in healthcare coverage;"

(2) Documents between the HHS and/or CMS transition teams and the White House concerning the same;

(3) Documents between and among employees of HHS and/or CMS "concerning the effect of the Trump Administration's decision to discontinue the advertising detailed above on enrollment numbers;"

(4) Documents between and among employees of the HHS Office of Public Affairs and/or CMS Offices of Communications "concerning the article published by *Politico* on January 26, 2017 entitled, 'Trump White House Abruptly Halts Obamacare Ads;'"

(5) Documents between and among employees of HHS and/or CMS "concerning the number of people who enrolled in healthcare coverage after President Trump took office;" and

(6) Documents between HHS and/or CMS employees and the White House concerning the same.

Dkt. 1 at 2–3 (Compl. ¶ 5). When the Department did not timely respond to the request, *see* 5 U.S.C. § 552(a)(6)(A)(i), Protect Democracy commenced this action, *see* Dkt. 1 (Compl.). Subsequently, the Department conducted a search for responsive records and released 274 pages of records to Protect Democracy, redacting certain portions pursuant to FOIA Exemption 5. Dkt. 18-1 at 7. This initial production consisted of 33 pages located in the files of the Office of the Secretary—which the Department refers to as the "HHS production"—and 241 pages of records

located in the files of the Centers for Medicare and Medicaid Services ("CMS")—which the Department refers to as the "CMS production." *See* Dkt. 20 at 11–12; Dkt. 25 at 6–7.

On December 15, 2017, the Department moved for summary judgment, Dkt. 18, and on January 23, 2018, Protect Democracy filed its cross-motion for summary judgment, Dkt. 20. In its cross-motion, Protect Democracy argued both that (1) the Department did not conduct an adequate search, and (2) the Department unlawfully redacted numerous records pursuant to FOIA Exemption 5. Dkt. 20 at 21. With respect to the redacted material, Protect Democracy requested that the Court order the Department to re-produce the relevant records without the improper redactions and to produce a more detailed *Vaughn* index (or, in the alternative, to submit the unredacted versions of the relevant records to the Court for *in camera* review). *Id.* at 26.

After reviewing Protect Democracy's opposition and cross-motion, the Department requested an extension of time to file its final brief so that it could conduct further searches for potentially responsive records, Dkt. 22, and the Court granted that request, Minute Order (Feb. 21, 2018). The Department then conducted supplemental searches and released an additional 256 pages of responsive records. Dkt. 27 at 12. At the same time, moreover, the Department reconsidered some of its prior withholdings and released unredacted copies of a handful of documents. *Id.* at 4. This effort had the desired effect of narrowing the scope of the dispute, and Protect Democracy withdrew its challenge to the adequacy of the Department's searches and its challenge with respect to the records that the Department re-released without redactions. *Id.* Protect Democracy, however, continues to challenge the Department's invocation of Exemption 5, arguing that, with respect to some redactions, it is evident that the Department has misapplied Exemption 5 and that, as to others, the *Vaughn* index and supporting declarations offer

insufficient detail to permit Protect Democracy or the Court to determine whether the redactions were lawful. *Id*.

The sole remaining issue before the Court is whether the Department lawfully redacted various records—in both its initial and supplemental productions—pursuant to Exemption 5.

## II. LEGAL STANDARD

The Freedom of Information Act is premised on the notion that "an informed citizenry [is] vital to the functioning of a democratic society . . . [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA embodies a "general philosophy of full agency disclosure," *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)), mandating that an agency disclose records on request unless they fall within one of nine exemptions. *See* 5 U.S.C. § 552(b). "These exemptions are 'explicitly made exclusive' and must be 'narrowly construed.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (first quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973), then quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)). The agency bears the burden of showing that a claimed exemption applies. *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979); *Loving v. Dep't of Def.,* 550 F.3d 32, 37 (D.C. Cir. 2008).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An agency may meet this burden by submitting "relatively detailed and non-conclusory" affidavits or declarations,

4

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by an agency in declarations when those declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Gallant v. NLRB,* 26 F.3d 168, 171 (D.C. Cir. 1994).

A reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.,* 608 F.2d 1381, 1388 (D.C. Cir. 1979). "[E]xemptions from disclosure," however, "must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable." *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted). The Court reviews the agency's decision *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

### III. ANALYSIS

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption shields "those documents . . . normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Courts have, accordingly, looked to the three traditional civil discovery privileges in evaluating whether an agency has lawfully withheld agency records pursuant to Exemption 5: "(1) the attorney work-

product privilege; (2) the deliberative process privilege; and (3) the attorney-client privilege." *Wright v. U.S. Dep't of Justice*, 121 F. Supp. 3d 171, 184 (D.D.C. 2015).

To justify its redactions, the Department relies on the deliberative process and attorney-client privileges. *See* Dkt. 18 at 10–19. Protect Democracy, in turn, contends that it is evident from the available information that some of the redactions at issue do not qualify for either privilege and that, as to other redactions, the Department's *Vaughn* index and supporting declarations fail to provide sufficient information to support the redactions. *See* Dkt. 20 at 21–25.

**A.      Deliberative Process Privilege**

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' . . . by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citations omitted).

"To qualify for withholding under Exemption 5's [deliberative process] privilege, information must be both 'predecisional' and 'deliberative.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). A record "is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made," and it is "deliberative if

6

it 'reflects the give-and-take of the consultative process.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations omitted). As with other FOIA exemptions, the agency bears the burden of showing that it has properly invoked the privilege. *See, e.g.*, *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018).

Protect Democracy contends that the Department has relied on the deliberative process privilege "far too broadly" and, in any event, has failed to carry its burden of demonstrating that it has lawfully invoked the privilege. Dkt. 20 at 21. Without going document-by-document, Protect Democracy points to examples of inconsistent redactions between the HHS and the CMS productions and examples of redactions of what appear to be factual or post-deliberative material. *Id.* at 22–24. More generally, it argues that the Department's *Vaughn* indices and declarations fail to provide descriptions of the withheld material that are adequate to permit it or the Court to determine whether the privilege is applicable. *Id*. at 23–24; *see also* Dkt. 27 at 5–11. The Department, in turn, responds that inconsistent redactions are not fatal because "Exemption 5 withholdings are discretionary by nature," Dkt. 25 at 20; that any factual material was properly redacted as "inextricably intertwined with the deliberative sections of documents," *id*.; that there is nothing wrong with formulaic *Vaughn* index entries, particularly "when a FOIA request expressly seeks communications that are part of one ongoing deliberative process over the course of a short period of time," *id*. at 21; and that the post-deliberative material identified by Protect Democracy has now been produced, *id*. at 22.

Protect Democracy's challenge to the adequacy of the Department's *Vaughn* indices is sound and provides sufficient basis to deny the Department's motion for summary judgment with respect to the deliberative process privilege. Because the Court cannot determine, on the current record, whether the Department has lawfully invoked the deliberative process privilege, the

Court must also deny Protect Democracy's cross-motion for summary judgment. Finally, with one exception detailed below, the Court will deny—at least for now—Protect Democracy's alternative request that the Court conduct an *in camera* review of the documents. The Court will, instead, order that the Department supplement its *Vaughn* indices and/or declarations to address the concerns discussed below.

1.  *Adequacy of the Department's* Vaughn *Indices*

When evaluating assertions of the deliberative process privilege, courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining 'what confidentiality is needed to prevent injury to the quality of agency decisions.'" *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted). Still, to meet its burden, the agency must offer "a relatively detailed justification" for assertion of the privilege. *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). The agency "cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

"The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" *Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States v. U.S. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). Under the deliberative process privilege,

> unlike other exemptions where the agency declaration and *Vaughn* index may be read in conjunction to provide an adequate justification for application of an exemption to a class or category of records, to sustain its burden of showing that

8

records were properly withheld under Exemption 5, an agency must provide in its declaration and *Vaughn* index precisely tailored explanations for each withheld record at issue.

*Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 188 (D.D.C. 2013). At the very least, an agency is required to provide the following information for each document at issue: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Id.* at 189 (citing *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257–58 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 867–68). Here, at least in many instances, the Department's *Vaughn* indices and declarations lack detail sufficient to satisfy this burden.

*First*, although the Department does note that the deliberations at issue dealt with the subject of the FOIA request—i.e., the Department's discontinuation of ACA advertisements—its *Vaughn* indices and declarations are otherwise devoid of any detail about the nature of relevant deliberations. The declarations submitted in support of the Exemption 5 withholdings from the HHS initial and supplemental productions, for example, merely note that "HHS invoked this privilege to protect deliberative recommendations concerning the discontinuation of certain advertisements for healthcare.gov." Dkt. 18-2 at 7 (Marquis Decl. ¶ 17); Dkt. 25-1 at 8 (Bell Decl. ¶ 19). The *Vaugh* index relating to the initial HHS production is similarly anemic. With one exception, it merely repeats the same uninformative description for each withholding: "redacted material consists of pre-decisional, deliberative recommendations concerning the discontinuation of certain advertisements for healthcare.gov." *See* Dkt. 18-2 at 110–13 (Ex. 10). Many of the *Vaughn* descriptions for the Department's other productions—the CMS initial production, the CMS supplemental production, and the HHS supplemental production—contain

this same description. *See* Dkt. 18-3 at 11–23 (Ex. 1); Dkt. 25-1 at 245–55 (Ex. 3); Dkt. 25-2 at 41–42 (Ex. 3). Far from "establish[ing] 'what deliberative process is involved, and the role played by the documents in issue in the course of that process,'" *Senate of P.R.*, 823 F.2d at 585–86 (citation omitted), these meager descriptions give this Court no means by which to assess whether the privilege applies. They "tell[] the court little," if anything, "about the deliberative nature of the information contained in the document in question." *Judicial Watch*, 449 F.3d at 152.

A comparison to some of the Department's other *Vaughn* descriptions, which provide more detail, illustrates this deficiency.[1] The Department, for example, included *Vaughn* descriptions explaining that some of the redacted material contains recommendations (1) concerning "how to respond to questions from the press, along with draft press release and talking points," Dkt. 25-1 at 250 (Ex. 3); (2) concerning "the agency's response to a letter from the Governor of Minnesota," *id*. at 255 (Ex. 3); and (3) reflecting "a draft of an instruction to a government contractor," Dkt. 18-2 at 111 (Ex. 10). These examples show that the Department is able, contrary to its assertion, to "identify[] the specific proposals and recommendations under discussion" without "reveal[ing] the information that the exemption is designed to protect." Dkt. 25 at 21.

The Department argues that its use of identical descriptions across entries does not mean that those descriptions are inadequate. Dkt. 25 at 21. That is correct, as far as it goes. Courts in this circuit "permit the satisfaction of the government's burden of proof . . . through generic,

---

[1] Protect Democracy seems to concede that some of the Department's *Vaughn* index entries are sufficient, making it difficult to discern which documents remain at issue. *See, e.g.*, Dkt. 27 at 8. If the Department renews its motion and Protect Democracy files a second cross-motion, Protect Democracy should identify with specificity the discrete withholdings or redactions that it is contesting.

categorical showings" in appropriate circumstances. *Maydak v. Dep't of Justice*, 218 F.3d 760, 766 (D.C. Cir. 2000). What is insufficient, however, is boilerplate language that might be used in any *Vaughn* index in any FOIA case. Because such boilerplate descriptions are unmoored from the specific rationale for, or the content of, the relevant redactions, they fail to provide the Court with "a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB*, 26 F.3d at 173 (internal quotation omitted). In other words, the problem is not that each *Vaughn* entry is identical; the problem is that the entries lack sufficient detail.

*Second*, and for much the same reason, the Department fails to make an adequate showing regarding the function and significance of the withheld material to any agency deliberations. As noted above, in both the initial and supplemental HHS productions, the Department "invoked th[e] privilege to protect deliberative recommendations concerning the discontinuation of certain advertisements for healthcare.gov." Dkt. 18-2 at 7 (Marquis Decl. ¶ 17); Dkt. 25-1 at 8 (Bell Decl. ¶ 19). The *Vaughn* indices, with minor exception, simply repeat this conclusory assertion. *See generally* Dkt. 18-2 at 110–13 (Ex. 10); Dkt. 25-1 at 245–55 (Ex. 3). But that description says nothing of the role the documents played in the deliberative process.

In this respect, the Department's descriptions of the materials withheld from the CMS productions fare better, although they also lack important detail. Most of the entries in the *Vaughn* index mirror the uninformative entries provided for the HHS productions. *See generally* Dkt. 18-3 at 11–23 (Ex. 1); Dkt. 25-2 at 41–42 (Ex. 3). The relevant declarations, however, offer additional detail, noting, for example, that some of the redactions were made because the relevant documents were drafts, subject to further review, edit, and modification, and others were made because the records were emails reflecting "back and forth discussions between federal

employees providing comment, opinion, and recommendations on various subject matter," Dkt. 18-3 at 8 (Gilmore Decl. ¶ 19); *see also* Dkt. 25-2 at 6 (Second Gilmore Decl. ¶ 17). But even this detail is inadequate, because it is not tied to specific records or redactions and because it provides little insight regarding the nature of the withheld material. Knowing that the redactions include back and forth discussions providing recommendations on various topics or show the creation and review of drafts is helpful, but is not enough to permit the Court to determine whether each redaction at issue is consistent with FOIA.

*Finally*, in order to show that redactions reflect recommendations, rather than agency decisions, the agency must provide information relating to "the positions in the chain of command of the parties to the documents." *Arthur Andersen,* 679 F.2d at 258. The vast majority of the Department's *Vaughn* index entries, however, simply note that the withheld materials were "[e]mail chain[s] . . . between [Department] officials." *See generally* Dkt. 18-2 at 110–13 (Ex. 10); Dkt. 18-3 at 11–23 (Ex. 1); Dkt. 25-1 at 245–55 (Ex. 3); Dkt. 25-2 at 41–42 (Ex. 3). Moreover, although the redacted records do disclose the names and offices of the senders and recipients, the Department never explains who these individuals are, nor, more importantly, what role they played in the relevant discussions. Without that information—even in summary form—the Court cannot "discern whether these communications 'reflect the give and take of the deliberative process.'" *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 191 (quoting *Pub. Citizen v. Office of Mgmt. & Budget*, 598 F.3d 965, 976 (D.C. Cir. 2010)).

Having concluded that the Department's submissions fail to offer sufficient detail to permit the Court to evaluate whether the redactions were lawful, the Court must decide what this means for the parties' respective cross-motions for summary judgment. For one thing, it certainly means that the Court must deny the Department's motion. Although perhaps less

obvious, the same conclusion applies to Protect Democracy's cross-motion. The Court has not concluded that Exemption 5 is inapplicable or that the redacted material is not deliberative; it has merely held that the Department "has failed to supply [the Court] with . . . the minimal information necessary to make [that] determination." *Coastal States Gas Corp.*, 617 F. 2d at 861. Because the Department's submissions give "the court no way to determine whether the withheld information is of a deliberative nature," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006), the Court cannot reach Protect Democracy's other arguments—such as its contention that some of the material at issue appears to be post-decisional or factual—on the present record.[2] Accordingly, under these circumstances, the proper course is to deny Protect Democracy's cross-motion as well.

2. *Request for* In Camera *Inspection*

At the current stage of proceedings, the Court will—with one exception—also decline Protect Democracy's alternative request that the Court conduct an *in camera* review of the challenged redactions on a document-by-document basis to determine whether the redacted material is, in fact, deliberative. Where, as here, a court finds that an "agency [has] fail[ed] to provide a sufficiently detailed explanation to enable the . . . court to make a de novo

---

[2] Protect Democracy objects, for example, to the Department's decision to withhold portions of "a list of Open Enrollment activities planned for the next two weeks," which was apparently developed during the closing days of the Obama administration. Dkt. 25-1 at 192–93 (Ex. 1); *see also* Dkt. 27 at 10–11. According to Protect Democracy, "[t]he Trump administration's decision to revisit this plan does not retroactively make it deliberative." Dkt. 27 at 10–11. At least on the present record, it is unclear whether that assertion is correct. The deliberative process privilege applies to "agency" deliberations, not to deliberations specific to a particular administration. The email at issue, moreover, was sent on January 23, 2017, *after* the change in administrations occurred. It is entirely possible that, as of that date, no final decision had been made to go forward with the planned activities and that, even if others in the Department had previously decided to go forward, that decision was not final and remained subject to deliberations.

determination of the agency's claims of exemption, the . . . court . . . has several options, including inspecting the documents *in camera,* requesting further affidavits, or allowing the plaintiff discovery." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). "[A] district court should not undertake *in camera* review of withheld documents," however, "as a substitute for requiring an agency's explanation of its claimed exemptions." *Id.* Mindful of the Department's expertise and "the proper limits of the judicial role in FOIA review," *Hayden,* 608 F.2d at 1388, the Court will permit the Department, in the first instance, to offer a more detailed description of its bases for concluding that each of the redactions at issue was necessary to protect the deliberative process.

The Court reaches a different conclusion, however, with respect to one document. The unredacted portion of that document asserts:

> Here is what we are providing on the record from HHS spokesman:
>
> "We aren't going to continue spending millions of taxpayers' dollars promoting a failed government program. Once an assessment was made, we pulled back the most expensive and least efficient part of this massive ad campaign which was set to run over the weekend. Those cost savings will be returned to the U.S. Treasury."
>
> Here is what we are providing on background:
>
> [redacted]

Dkt. 25-1 at 96 (Ex. 1). The *Vaughn* index reports that the redacted material consists of "draft talking points." *Id*. at 250 (Ex. 3). The accompanying declaration provides no additional information with respect to this redaction.

Protect Democracy is, understandably, perplexed by the Department's invocation of the deliberative process privilege here. It argues that "[t]he context is clear that for both sets of talking points"—the on the record talking points, and the "background" talking points—"the

14

decision had already been made as to what to provide to the press." Dkt. 27 at 10. The fact that the second set of talking points were provided on "background," Protect Democracy further argues, has no bearing on whether that material was deliberative. *Id.* The deliberative process privilege, after all, applies only to "communications that are pre-decisional[,] deliberative," *Nat'l Sec. Archive*, 752 F.3d at 463, and non-public, and it therefore provides no protection for information that an agency has decided to disseminate—and appears to have disseminated— whether on the record or on background.

It may be that the Department is correct that the first half of the email reflects a final agency decision about its (on the record) position, while the second half contains draft (off the record) comments, subject to further review, consideration, or refinement. The Court cannot make that determination, however, on the present record, and Protect Democracy has made at least a prima facie showing that the redacted material was in final form. The Court will, accordingly, direct that the Department submit an unredacted version of the email to the Court for ex parte, *in camera* review.

**B.     Attorney-Client Privilege**

Exemption 5 also incorporates the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data,* 566 F.2d at 252. In FOIA cases, the agency is typically the "client" and the agency's lawyers are typically the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey,* 148 F.3d 1100, 1105 (D.C. Cir. 1998) (citing *Coastal States,* 617 F.2d at 863). "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice," and "communications from attorneys to their clients if the communications 'rest on confidential

15

information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)).

The Department withheld or redacted only a handful of records based on an assertion of attorney-client privilege. Protect Democracy, nonetheless, argues that the Department "may . . . have over-applied" the attorney-client privilege. Dkt. 20 at 24. In particular, Protect Democracy objects to the Department's invocation of the attorney-client privilege with respect to "a communication from non-lawyer Mark Weber to four other non-lawyers . . . and three block redactions of text that the *Vaughn* index describes as attorney-client communications without reference to the communication containing legal advice." Dkt. 27 at 9–10.

The redacted versions of the first two of these documents, Dkt. 18-2 at 77 (Ex. 9); *id*. at 79 (Ex. 9), merely show that Mark Weber, who was the Acting Assistant Secretary for Public Affairs at the relevant time, Dkt. 18-2 at 6 (Marquis Decl. ¶ 14), forwarded two emails to Michael Marquis, who is the FOIA officer for the Office of the Secretary, *id*. at 1 (Marquis Decl. ¶ 1), and who, presumably, received the emails for purposes of responding to Protect Democracy's FOIA request. The underlying emails, including address information, are redacted in their entirety. *See* Dkt. 18-2 at 77 (Ex. 9); *id*. at 79 (Ex. 9). The *Vaughn* index, moreover, does not identify who sent or received the redacted emails, and it merely asserts that the "redacted material discloses communications between [the Office of General Counsel ("OGC")] and CMS concerning the possibility of discontinuing certain advertisements for healthcare.gov." Dkt. 18-2 at 110–11 (Ex. 10). The accompanying declaration, in turn, merely repeats this description. *Id*. at 8 (Marquis Decl. ¶ 19).

The second two documents, in contrast, reveal the underlying email header. The first of these is an email from Mark Weber to two Department employees, with two other employees

16

listed on the cc line. Dkt. 18-2 at 99 (Ex. 9). None of these employees is identified as associated with the OGC, and the only substance that is revealed simply states: "Jeff – when you get a chance give me a call." *Id.* (Ex. 9). The second is an email from Weber to Michael Goulding, whose email address is associated with the OGC. *Id*. at 101 (Ex. 9). The only disclosed portion of this email says: "Contact info . . . Thanks." *Id*. (Ex. 9). The redacted portion appears below the signature line, suggesting that it was copied or forwarded from another email. *Id.* (Ex. 9). The *Vaughn* index and supporting declaration, once again, merely assert that the redacted materials disclose "communications between OGC and CMS concerning the possibility of discontinuing certain advertisements for healthcare.gov." *Id.* at 112 (Ex. 10); *id*. at 8 (Marquis Decl. ¶ 19).

Recognizing that this information was too limited to support an assertion of attorney-client privilege, the Department filed a supplemental declaration along with its reply brief and opposition to Protect Democracy's cross-motion. Dkt. 25-1 (Bell Decl.). That declaration attests as follows:

> HHS invoked [the attorney-client] privilege to protect confidential communications between agency officials and counsel with the Office of General Counsel (OGC) for purposes of obtaining legal advice, including where the contents of those communications with counsel were subsequently disseminated and discussed among agency officials, concerning any legal ramifications related to the possibility of discontinuing certain advertisements for healthcare.gov. In this declaration, I am clarifying that the attorney-client privileged information was withheld from the September 2017 release (previously described in the declaration of Michael S. Marquis submitted in this matter) on this basis: confidential communications between OGC and CMS relating to OGC's professional legal advice on the discontinuation of advertisements.

Dkt. 25-1 at 8–9 (Bell Decl. ¶ 20).

With this clarification, the Court is persuaded that the Department lawfully withheld redacted portions of the four documents based on Exemption 5 and the attorney-client privilege.

Although the Department has not, with one exception, identified the specific lawyer who provided the relevant legal advice, it has attested that the Department's Office of General Counsel provided legal advice to CMS. It has attested that the redacted communications were "confidential" and that they were either for the purpose "of obtaining legal advice" or to disseminate and discuss that advice with other agency officials. Dkt. 25-1 at 8–9 (Bell Decl. ¶ 20). And it has explained that the advice at issue related to "any legal ramifications related to . . . discontinuing [the] advertisements for healthcare.gov." *Id.* In short, the Department has carried its burden on showing that the communications were between a law office—the Office of the General Counsel—and a client—CMS (or was passed along to other agency officials); that those communications were "confidential;" and that they were either for the purpose of securing or disseminating legal advice. Nothing more is required to maintain the privilege. *In re Sealed Case*, 737 F.2d at 98–99.

Protect Democracy, moreover, does not seem to dispute that an attestation by a knowledgeable official that "the withheld communications contained 'confidential communications between OGC and CMS concerning legal advice related to the possibility of discontinuing certain advertisements for healthcare.gov'" would suffice. Dkt. 27 at 9 (emphasis omitted) (quoting Dkt. 25-2 at 42 (Ex. 3)). Protect Democracy merely contends that the Department failed to make such a showing with respect to its initial production. Dkt. 27 at 9–10. For the reasons explained above, the Court disagrees and, accordingly, concludes that the Department has carried its burden with respect to the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, the Department's motion for summary judgment, Dkt. 18, is hereby **GRANTED** in part and **DENIED** in part.  Plaintiff's cross-motion for summary judgment, Dkt. 20, is hereby **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

                                        /s/ Randolph D. Moss
                                        RANDOLPH D. MOSS
                                        United States District Judge

Date:  February 27, 2019